UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL LACIEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 11 C 4734 |
| PHONAK, LLC and KATY PERKINS, | ) |
| | ) Judge John W. Darrah |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Defendants Phonak, LLC ("Phonak") and Katy Perkins (collectively, the "Defendants") removed this case from Cook County Circuit Court on July 13, 2011. Plaintiff Michael Lacien has filed a Complaint against Defendants, containing three counts: Count I alleges retaliatory discharge in violation of the public policy of protecting the health and safety of its citizens; Count II alleges a retaliatory discharge in violation of 820 ILCS 140/1, *et seq.* (the "One Day Rest In Seven Act" or the "Act"); and Count III alleges defamation *per se*. Before the Court is the Defendants' Motion to Dismiss Counts II and III of the Plaintiff's Complaint.

## BACKGROUND[1]

Lacien began working for Phonak as a Software Support Specialist in January 2007. (Compl. ¶ 4.) On October 19, 2010, Lacien had a meeting with the manager of Phonak's customer service department, Tara O'Dell, during which Lacien raised concerns about the work environment at Phonak. (*Id.* ¶¶ 5-6.) Specifically, Lacien stated that he was concerned that ear molds were being improperly handled by Phonak employees, thereby exposing them to potential

---

[1] The following facts are drawn from Plaintiff's Complaint and are accepted as true for purposes of the Motion to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).

biohazards. (*Id.* ¶ 7.) Lacien also complained that he was not permitted a lunch break of at least 20 minutes due to a recent increase in sales and call traffic.

On October 20, 2010, Lacien met with Sharon Essig of Phonak's Human Resources Division. (*Id.*) Lacien raised the concerns he had raised with O'Dell. (*Id.*)

On November 4, 2010, Lacien received a phone call from his manager, Katy Perkins, O'Dell, and Essig, advising him that his employment at Phonak had been terminated for cause effective immediately. (*Id.*)

## LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted). When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed in the light most favorable to the plaintiff; all well-pleaded factual allegations are accepted as true, and all reasonable inferences are construed in the plaintiff's favor. *Id.* However, a complaint must allege "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Further, the amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory alleged. *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

2

**ANALYSIS**

In Count II, Lacien brings an Illinois common-law claim for retaliatory discharge based on the One Day Rest in Seven Act, in which he alleges that he was discharged in retaliation for complaining to his supervisors that he was not able to take a 20-minute lunch break. In relevant part, the "Meal Period" provision of the One Day Rest in Seven Act provides:

> Every employer shall permit its employees who are to work for 7 ½ continuous hours or longer, except those specified in this Section, at least 20 minutes for a meal period beginning no later than 5 hours after the start of the work period.

82 ILCS 140/3.

Because this case was removed to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332, Illinois law will be applied. *See Land v. Yamaha Motor Corp.*, 272 F.3d 514, 516 (7th Cir. 2001) ("A federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits.").

In order to state a claim for retaliatory discharge under Illinois law, a plaintiff must show: "(1) that the employee was discharged in retaliation for the employee's activities; and (2) that the discharge is in contravention of a clearly mandated public policy." *Lambert v. The City of Lake Forest*, 542 N.E.2d 1216, 1218-19 (Ill. App. Ct. 1989) (citing *Palmateer v. International Harvester Co.*, 421 N.E.2d 876 (1981) (*Palmateer*). Illinois courts have never assigned a precise definition to what is meant by public policy. "[I]n general, it can be said that public policy concerns what is right and just and what affects the citizens of the state collectively. It is found in the State's constitution and statutes and, when they are silent, in its judicial decisions." *Palmateer*, 421 N.E.2d at 878.

The Illinois Supreme Court has not decided the issue of whether the One Day Rest in Seven Act may provide the basis for a retaliatory discharge claim. Therefore, the Court must

3

determine how the Illinois Supreme Court would decide this issue. *Malone v. Bankhead Enterprises, Inc.*, 125 F.3d 535, 539 (7th Cir. 1997) (holding that where the Illinois Supreme Court had not decided the issue, "we must therefore predict how the Illinois Supreme Court would decide this issue."). "The precedent from the intermediate appellate courts in Illinois . . . provides perhaps the best indication of how the Illinois Supreme Court would decide this case." *Id.*

The Illinois Appellate Court decided this issue as a matter of first impression in *Carty v. Suter Company, Inc.*, 863 N.E.2d 771 (Ill. App. Ct. 2007) (*Carty*), a case that Defendants failed to cite in its opening memorandum.[2] In *Carty*, the plaintiff brought a claim for retaliatory discharge based on the One Day Rest in Seven Act, alleging that he was discharged in retaliation for reporting that he was not receiving a lunch break. *Id.* at 785. In reversing the trial court's grant of summary judgment for the defendant, the Illinois Appellate Court held that the plaintiff's discharge violated clear mandates of public policy. *Id.* at 774. In other words, the court held that the One Day Rest in Seven Act may be the source of the applicable public policy in bringing a retaliatory discharge claim.

Defendants challenge the Illinois Appellate Court's decision in *Carty*. As the Seventh Circuit held:

> in the absence of prevailing authority from the state's highest court, federal courts ought to give great weight to the holdings of the state's intermediate appellate courts and ought to deviate from those holdings only when there are persuasive indications that the highest court of the state would decide the case differently from the decision of the intermediate appellate court.

---

[2] Lacien, however, did raise *Carty* in his Response. *See* Local Rule for the Northern District of Illinois 83.53.3(3) ("In appearing in a professional capacity before a tribunal, a lawyer shall not: fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel."); *see also Ill. R. of Prof. Conduct* 3.3(a)(3).

4

Defendants present no convincing arguments that the Illinois Supreme Court would decide the issue differently than the Illinois Appellate Court. First, Defendants' argument that the One Day Rest in Seven Act concerns an employee's private interest rather than the public policy of Illinois lacks merit. In support, Defendants rely on two inapposite cases.

In *Long v. Commerical Carriers, Inc.*, 57 F.3d 592 (7th Cir. 1995), the Court of Appeals held that the discharge of a truck driver who refused to sign a lease that governed his employment on the basis that the lease violated Interstate Commerce Commission regulations did not give rise to a retaliatory discharge claim. *Id.* at 596. In so holding, the Court of Appeals noted, "[T]hese infractions were violations of agency regulations, not statutory law. Further, they were regulatory violations that involved contractual issues between the employer and the employee." *Id.*

Relying on precedent from the Illinois Appellate Court concerning a similar statute, in *Wilke v. Salamone*, 404 F. Supp. 2d 1040, 1050 (N.D. Ill 2005), the court held that an individual's wage claim under the Illinois Minimum Wage Law could not be a basis for retaliatory discharge. *See id.* ("[P]ublic policies associated with economic regulation "are less likely to be held sufficient to support claims of retaliatory discharge."). As neither of these cases present remotely analogous circumstances to those at issue here, Defendants' argument is not persuasive.

Defendants also argue that the Act does not evidence a clear mandate of public policy because it grants rights to some employees while excluding others. This argument is not compelling as the "exempted" employees are still guaranteed (or have exercised their right to waive) their meal periods. The Meal Period provision "does not apply to employees for *whom meal periods are established* through the collective bargaining process." 850 ILCS 140/3

5

(emphasis added). Moreover, the Meal Period provision "does not apply to employees who monitor individuals with developmental disabilities or mental illness, or both, and who, in the course of those duties, are required to be on call during an entire 8 hour work period; however, those employees *shall be allowed to eat a meal during the 8 hour work period* while continuing to monitor those individuals." *Id.* (emphasis added).

Defendants have not presented "persuasive indications" that the Illinois Supreme Court would decide this issue differently than *Carty*. The Court "gives great weight to the holdings of the state's intermediate appellate courts" and defers to the holding in *Carty*. Accordingly, Defendants' Motion to Dismiss Count II is denied.

In Count III, Lacien brings a claim for defamation *per se* against Phonak and Perkins, alleging that Perkins made false statements about him when she said that Lacien had been terminated for cause in the presence of O'Dell and Essig. (Compl. ¶ 23.) Under Illinois law, to state a defamation claim, a plaintiff must present facts that a defendant made a false statement about a plaintiff, the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages. *Seith v. Chicago Sun-Times*, 861 N.E.2d 1117 (Ill. App. Ct. 2007).

Defendant asserts that it maintains a qualified privilege over Perkins' communication concerning Lacien's termination; and Lacien, therefore, fails to state a claim because he cannot overcome this privilege. Under Illinois law, the defendant-employer may have a qualified privilege if the defamation claim arises out of an employer-employee relationship. *See Krasinski v. United Parcel Serv.*, 530 N.E.2d 468, 471 (Ill. 1998).

A qualified privilege operates as an affirmative defense to certain defamation claims. *See Babb v. Minder*, 806 F.2d 749, 753 (7th Cir. 1986). Therefore, a plaintiff is not required to plead

facts demonstrating that a statement is unprivileged unless the complaint affirmatively shows the statement is privileged. *See Chisholm v. Foothill Capital Corp.*, 940 F. Supp. 1273, 1285 (N.D. Ill. 1996). A plaintiff may overcome the privilege by pleading (and eventually proving) that the statement was made with actual malice – *i.e.,* made with knowledge of its falsity or in reckless disregard of whether it is true or false. *Id.*

Contrary to Defendants' position, Lacien's Complaint does not affirmatively show that the communication is privileged. (*See* Resp. at 9.) Therefore, Lacien is not required to plead facts demonstrating that the communication is unprivileged. Furthermore, citing two cases, Defendants argue that courts have decided whether a qualified privilege applies to defamatory statements at the pleading stage. (Resp. at 9 (citing *Sullivan v. Conway*, 157 F.3d 1092, 1098 (7th Cir. 1998) and *Parker v. House O'Lite Corp.*, 756 N.E.2d 286, 297 (Ill. App. Ct. 199).) But Defendants' citation of these two cases actually contradicts their argument: these two cases were decided in the context of summary judgment. (Resp. at 9.)

Even if the Court were to consider whether the qualified privilege applies, the application of the privilege necessarily raises factual questions that are not properly resolved at this stage of ligation. The elements of a qualified privilege are: "(1) good faith by the writer; (2) interest or duty to be upheld; (3) a statement limited in its scope to that purpose; (4) a proper occasion; and (5) publication in a proper manner and to the proper parties only." *Phillips v. Univ. of Chicago Hosps. and Clinics*, 484 N.E.2d 1100, 1104 (Ill. App. Ct. 1985). Each of these elements raises significant factual questions.

Accordingly, Defendants' Motion to Dismiss is denied as to Count III.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Counts II and III [11] is denied.

Date: 12-1-11

JOHN W. DARRAH
United States District Court Judge